KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER     Bar No. 066401
NANCY BARRON        Bar No. 099278
ADAM J. McNEILE     Bar No. 280296
445 Bush St., 6th Floor
San Francisco, CA 94108
Telephone: (415) 632-1900
bryan@kbklegal.com
nancy@kbklegal.com
adam@kbklegal.com

LYNGKLIP & ASSOCIATES, PLC
IAN LYNGKLIP        Bar No. P47173
24500 Northwestern Hwy #206
Southfield, MI 48075
Telephone: (248) 208-8864
ian@michiganconsumerlaw.com

Attorneys for Plaintiff Aram Terteryan and the putative class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ARAM TERTERYAN, individually and on behalf of all others similarly situated, | Case No. |
|---|---|
| Plaintiff. | CLASS ACTION |
| v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227, *ET SEQ.*** |
| NISSAN MOTOR ACCEPTANCE CORPORATION, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Aram Terteryan ("Plaintiff"), on behalf of himself and all others similarly situated, alleges on personal information and upon information and on belief based upon, *inter alia*, the investigation made by and through his attorneys, as follows.

**INTRODUCTION**

1. Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. (the "TCPA") in response to widespread complaints about unsolicited and unauthorized

telephone calls made to non-consenting consumers through the use of automatic telephone dialing systems ("ATDS"). Congress found that unwanted automated calls were a "nuisance and an invasion of privacy, regardless of the type of call" and that banning such calls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. §227. To this end, The TCPA prohibits any person from making any call (other than a call made for emergency purposes or with the prior express consent of the called party) to any cellular telephone using any ATDS.

2. This case concerns a particularly abusive practice – calling a borrower's references or acquaintances in an attempt to collect a delinquent debt from the borrower. Nissan Motor Acceptance Corporation, including Infiniti Financial, which is a division of NMAC ("NMAC"), is in the business of extending auto financing to consumers throughout the United States. A significant part of this business involves attempting to collect on accounts when they become delinquent.

3. As part of its policies and procedures, NMAC collects vast amounts of personal information about its borrowers, including the telephone numbers of its borrowers' references and acquaintances. NMAC collects this information so that NMAC can put pressure borrowers to pay his or her debt by repeatedly calling the borrower's references. These calls have the natural and intended effect of intruding into the personal lives of both the borrower and the reference, as well as shaming the borrower into payment.

4. NMAC places these calls to references using and automated telephone dialing systems. NMAC does not obtain the consent of the reference for these calls.

5. When NMAC systematically places these calls to the cellular phones of a borrower's reference without advance consent, these calls exemplify the rationale underlying the TCPA.

6. Plaintiff is among those persons whose cellular telephone number NMAC obtained as a reference for or acquaintance of a third-party borrower and whom NMAC subsequently called while attempting to collect a debt from that borrower. Plaintiff and each

Complaint for Damages and Injunctive Relief

putative class member did not consent, either expressly or by implication, at any time whatsoever, to allow NMAC to call them at the number assigned to their cellular telephone.

7. Plaintiff brings this action individually and on behalf of a class of all persons similarly situated, as more particularly defined below.

## PARTIES

8. Plaintiff Aram Terteryan is a natural person and a citizen of the County of Los Angeles, State of California.

9. Defendant NMAC is a California corporation. NMAC provides purchase and lease financing for Nissan and Infiniti vehicles throughout the United States

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. §227(b); 28 U.S.C. §1331; *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740 (2012).

11. Declaratory relief is available under 28 U.S.C. §2201. Injunctive relief is available under 47 U.S.C. §227(b)(3)(A).

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

## FCC RULINGS AND OTHER LEGAL DECISIONS IMPACTING CLAIMS BROUGHT UNDER THE TCPA

13. Congress has vested the Federal Communications Commission ("FCC") with the authority to issue interpretations, rules and regulations to implement the TCPA, and the FCC has done so in a series of Orders broadly interpreting the definition of an ATDS as technology has evolved. 47 U.S.C. §227(b)(2). According to findings by the FCC, such calls as those alleged herein are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd

14014 (2003).

14. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, §11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion[.]

*Id.* at §12. Congress also specifically found that:

> [T]he evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call[.]

*Id*. at §§12-13.

15. The FCC has ruled that the ability to dial numbers without human intervention in the calling process is the hallmark of an ATDS. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 2008*, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶¶12-13; *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517583, 18 F.C.C.R. 14014, ¶132 (Fed. Commc'n Cmm'n July 3, 2003) ("2003 TCPA Order").

16. Following Congress' directive, the FCC has expanded the definition of ATDS to include predictive dialers. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd 14014, 14092-93 (June 26, 2003) at ¶133.

17. Furthermore, the FCC has specifically ruled that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" within the TCPA. *Id.*

18. The FCC also has reaffirmed and repeated its prior ruling that the term "capacity" requires present ability rather than future possibility, because a broad reading of the statute is

required "to ensure that the restriction on autodialed calls not be circumvented." *In re Matters of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72 (July 10, 2015) ("2015 TCPA Order"), ¶19. Moreover "capacity" includes systems that include hardware and software that can be paired to function together to act as an ATDS, even where the equipment would not be able to do so separately. *Id.* at ¶10.

19. With respect to whether a device is considered an "automatic telephone dialing system" for purposes of the TCPA, the Ninth Circuit has specifically noted that "a system need not actually store, produce, or call randomly or sequentially generated numbers, it need only have the *capacity* to do it." *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) (emphasis added).

20. The FCC also ruled "We also reject [the] argument that the Commission should adopt a 'human intervention' test by clarifying that an autodialer is not an autodialer unless it has the capacity to dial numbers without human intervention. Because the Commission has previously rejected a restrictive interpretation of autodialer in favor of one based on a piece of equipment's potential ability, we find that [the] argument amounts to a simple variation on the 'present ability' arguments we reject above." 2015 TCPA Order at ¶20.

21. The TCPA has a four-year statute of limitations pursuant to 28 U.S.C. § 1658.

**FACTS**

**A. NMAC's Calls to Plaintiff**

22. In or about June 2014, an NMAC account holder, not a party to this action, obtained financing for a vehicle through NMAC (the "Account Holder"). At some point thereafter, the Account Holder fell behind on his payments to NMAC. Plaintiff was not a co-obligor on Account Holder's financing with NMAC, had no prior business relationship with NMAC, was a stranger to the transaction, and never gave NMAC consent to call his cellular telephone for any purpose whatsoever.

23. Nonetheless, in an attempt to collect from the Account Holder, NMAC used an ATDS to call Plaintiff's cellular telephone number, XXX-XXX-4848. In December, 2015,

Plaintiff received at least two calls to his cellular telephone from NMAC. The NMAC representative left at least one voicemail, and during one call, the person who called Plaintiff identified herself as representing Infiniti Financial, which is a division of NMAC. The NMAC representative indicated that the calls were attempts to locate and collect a debt from the third-party Account Holder. The NMAC representative further stated that Plaintiff was a reference for Account Holder.

24. At all times relevant, Plaintiff was the sole non-subscriber customary user of the cellular telephone number at issue. At no point did Plaintiff provide prior express consent for NMAC to call his cellular telephone, nor did any third-party with "common authority" provide prior express consent.

25. None of the calls were placed for an "emergency purpose" or with "prior express consent of the called party" within the meaning of 47 U.S.C. §227(b)(1)(A).

26. At all times relevant to this complaint, Plaintiff maintained exclusive custody and control over the cellular telephone and number at issue.

**B. NMAC's Use of an ATDS**

27. NMAC used equipment that has or had the capacity to store or produce telephone numbers to be called, using random or sequential number generator and to dial such numbers, also known as an "automatic telephone dialing system," as defined by 47 U.S.C. §227(a)(1), to place calls and/or text messages to the cellular telephone number belonging to Plaintiff.

28. As such, NMAC employs persons tasked with the following jobs:
   a. Monitoring effective predictive/preview dialer campaigns;
   b. Analyzing dialer performance;
   c. Creating dialer reporting systems;
   d. Creating dialer configuration changes;
   e. Developing day-to-day tactical calling plans;
   f. Monitoring dialer campaigns; and
   g. Developing predictive dialing strategies.

29. NMAC employed some or all of these practices when placing calls and/or text

messages to the cellular telephone number belonging to Plaintiff and the putative class members.

## CLASS ACTION ALLEGATIONS

30. It is NMAC's policy and practice to place, in the course of business, autodialed calls or calls using an ATDS to individuals whose cellular telephone numbers NMAC obtained as references, or even as mere acquaintances, for borrowers (or putative borrowers).

31. Therefore, Plaintiff brings this class action on behalf of himself and on behalf of all other persons similarly situated as members of the proposed class, pursuant to Federal Rule of Civil Procedure 23. This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

32. The proposed class consists of:

All persons in the United States:

    (a) to whose cellular telephones NMAC placed one or more non-emergency calls within the four (4) years prior to the filing of this complaint;

    (b) using an automatic telephone dialing system;

    (c) who were not party to any agreement with NMAC; and

    (d) whom NMAC called regarding the account of another person.

33. The members of the class are so numerous that joinder of all claims would be impracticable. While the exact number of class members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and on that basis alleges, that there are more than 40 members of the class.

34. There are questions of law and fact common to the class which predominate over any questions affecting individual class members. The predominant common questions include:

    (a) Whether NMAC used an ATDS or an artificial or prerecorded voice within the meaning of the TCPA and applicable FCC regulations, to place calls to the class;

    (b) Whether the class members gave consent to be called by NMAC, since they were not party to any agreement with NMAC;

    (c) The means used by NMAC to identify class members as potential targets

for calls concerning NMAC's borrowers; and

  (d)  Damages, including whether the violations were negligent, willful or knowing.

35. Plaintiff's claims are typical of the claims of the other members of the class. NMAC's conduct has caused Plaintiff and members of the class to sustain the same or substantially similar injuries and damages. NMAC has acted in a uniform manner with respect to Plaintiff and the other class members. Plaintiff has no interests antagonistic to the interests of the other members of the class.

36. Plaintiff will fairly and adequately represent and protect the interests of the members of the class. Plaintiff is a member of the class and does not have any conflict of interest with other class members. Plaintiff has retained and is represented by competent counsel who are experienced in complex class action litigation and claims involving violations of the TCPA.

37. The nature of this action makes a class action the superior and appropriate procedure to afford relief for the wrongs alleged herein. There will be no difficulty in the management of this class action. The identity of the putative class, as well as the fact and time of calls made to putative class members, is ascertainable from electronic databases within NMAC's custody or control. Individualized litigation presents the potential for inconsistent or contradictory judgments. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**CLAIM FOR RELIEF**
**(Violations of The Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*)**

38. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

39. The TCPA provides that it is unlawful for any person to make a non-emergency call using an automatic telephone dialing system or an artificial or recorded voice to any cellular phone service without prior express consent of the called party.

40. NMAC violated the TCPA by impermissibly placing calls to the cellular

telephones of Plaintiff and the members of the class using an ATDS or an artificial or prerecorded voice without their prior express consent.

41. Plaintiff and the members of the class have a legally protected interest in being free from autodialed calls.

42. NMAC has policies, practices or procedures of placing calls to cell phones regarding the collection of alleged debts, and for other purposes, without the prior consent of the called parties.

43. NMAC's violations were negligent, or alternatively, they were willful or knowing. 47 U.S.C. §312(f)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter an Order permitting this action to proceed as a class action, followed by judgment in favor of Plaintiff and against NMAC for:

A. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

B. A declaration that NMAC's equipment and messages are regulated by the TCPA;

C. An order enjoining NMAC from further violations of the TCPA; namely placing non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice to persons whose names and phone numbers NMAC had obtained as credit references or otherwise through information contained in the credit application, for lessees or borrowers, whose automotive leases or retail installment sales contracts had been assigned to NMAC.

D. Costs of suit incurred herein;

E. Reasonable attorneys' fees as part of a common fund, if any; and

F. Such other or further relief as the Court deems just and proper.

//
//
//
//

**JURY DEMAND**

Plaintiff demands trial by jury.

Dated: March 24, 2016          KEMNITZER, BARRON & KRIEG, LLP

By:   /s/ *Bryan Kemnitzer*
BRYAN KEMNITZER
NANCY BARRON
ADAM J. McNEILE
Attorneys for Plaintiff ARAM TERTERYAN and the Proposed Class

LYNGKLIP & ASSOCIATES, PLC

By:   /s/ *Ian Lyngklip*
IAN LYNGKLIP
Attorneys for Plaintiff ARAM TERTERYAN and the Proposed Class