KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER          Bar No. 066401
NANCY BARRON             Bar No. 099278
ADAM J. McNEILE          Bar No. 280296
445 Bush St., 6th Floor
San Francisco, CA 94108
Telephone: (415) 632-1900
bryan@kbklegal.com
nancy@kbklegal.com
adam@kbklegal.com

LYNGKLIP & ASSOCIATES, PLC
IAN LYNGKLIP             Bar No. P47173
24500 Northwestern Hwy #206
Southfield, MI 48075
Telephone: (248) 208-8864
ian@michiganconsumerlaw.com

Attorneys for Plaintiff Aram Terteryan, Tatyana Davtyan, Marine Davtyan, and the putative class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM TERTERYAN, TATYANA DAVTYAN, and MARINE DAVTYAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>Defendant. | Case No. 2:16-cv-02029-GW-KS<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227, *ET SEQ.***<br><br>JURY TRIAL DEMANDED |

Plaintiffs Aram Terteryan, Tatyana Davtyan, and Marine Davtyan (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege upon information and on belief, as follows.

**INTRODUCTION**

1.   Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*.

(the "TCPA") in response to widespread complaints about unsolicited and unauthorized telephone calls made to non-consenting consumers through the use of automatic telephone dialing systems ("ATDS") or by use of artificial or prerecorded voice. Sponsoring Senator Ernest "Fritz" Hollings called such calls "the scourge of modern civilization." 137 Cong. Rec. 30,821-30,822 (1991). Congress found that unwanted automated calls were a "nuisance and an invasion of privacy, regardless of the type of call" and that banning such calls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. §227. To this end, the TCPA prohibits any person from making any call (other than a call made for emergency purposes or with the prior express consent of the called party) to any cellular telephone using any ATDS, or using artificial or prerecorded voice.

    2.    This case concerns a particularly intrusive practice; namely that of a lender calling a borrower's third-party credit references or mere acquaintances in an attempt to collect a debt from the borrower. Nissan Motor Acceptance Corporation, including its Infiniti Financial Services division (collectively, "NMAC"), is in the business of extending auto financing to consumers throughout the United States. A significant part of this business involves attempting to collect on accounts when they become delinquent.

    3.    As part of its policies and procedures, NMAC collects vast amounts of personal information about its borrowers, including the telephone numbers of its borrowers' references and non-reference acquaintances, who have no business relationship to NMAC. Nonetheless, NMAC harvests this information so that, in the event a borrower defaults on a payment, NMAC can pressure a borrower to pay the debt by harassing third party acquaintances of the borrower. These calls have the natural and intended effect of intruding on the privacy and seclusion of the recipients of such calls, in an effort to shame the borrower into payment through peer pressure.

    4.    NMAC places these calls to the borrower's acquaintances and references using and automated telephone dialing systems, and/or by using an artificial or prerecorded voice. NMAC does not obtain the consent of the recipient for these calls.

    5.    Plaintiffs are among those persons whose cellular telephone number NMAC

called while attempting to collect a debt from the borrower, who is not a party to this action. Plaintiffs and each putative class member did not consent, either expressly or by implication, at any time whatsoever, to allow NMAC to call them at the number assigned to their cellular telephone. Plaintiffs and each putative class member paid a subscriber fee for the use of the cellular phone, or had such fee paid on his or her behalf.

6. NMAC's unwanted calls caused Plaintiffs the very harm that Congress sought to prevent – a "nuisance and invasion of privacy." The calls wasted Plaintiffs' time and money, as they trespassed on and interfered with Plaintiffs' rights and interest in their cellular telephones. The calls were an intentional intrusion upon their solitude or seclusion, disrupting their peace and quiet; the calls tied up their phone lines, trespassed on plaintiffs' telecommunications equipment for their own purposes, prevented use of the phone for other calls during the time of the intrusion, and used up the limited space on their voice mail. The calls further demanded a return call, which was alarming or confounding, and further wasted the recipient's time.

7. Plaintiffs bring this action individually and on behalf of a class of all persons similarly situated, as more particularly defined below.

**PARTIES**

8. Plaintiff Aram Terteryan is a natural person and a citizen of the County of Los Angeles, State of California. (The parties will hereafter be referred to by their first name, because some of the plaintiffs share a common surname.)

9. Plaintiff Tatyana Davtyan is a natural person and a citizen of the County of Los Angeles, State of California.

10. Plaintiff Marine Davtyan is a natural person and a citizen of the County of Los Angeles, State of California.

11. Defendant NMAC is a California corporation. NMAC provides purchase and lease financing for Nissan and Infiniti vehicles throughout the United States.

**JURISDICTION AND VENUE**

12. This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. §227(b); 28 U.S.C. §1331; *Mims v. Arrow Fin. Servs., LLC*,

132 S.Ct. 740 (2012).

13. Declaratory relief is available under 28 U.S.C. §2201. Injunctive relief is available under 47 U.S.C. §227(b)(3)(A).

14. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

**FCC RULINGS AND OTHER LEGAL AUTHORITY IMPACTING CLAIMS BROUGHT UNDER THE TCPA**

**A.    The FCC Has Broadly Interpreted the TCPA to Protect Consumers**

15. Congress has vested the Federal Communications Commission ("FCC") with the authority to issue interpretations, rules and regulations to implement the TCPA, and the FCC has done so in a series of Orders broadly interpreting the protections the TCPA provides to consumers. 47 U.S.C. §227(b)(2). According to findings by the FCC, such calls as those alleged herein are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

16. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, §11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion[.]

*Id.* at §12. Congress also specifically found that:

> [T]he evidence presented to the Congress indicates that automated or prerecorded

4

calls are a nuisance and an invasion of privacy, regardless of the type of call[.] *Id*. at §§12-13.

### B. The FCC Has Broadly Interpreted What Constitutes ATDS

17. The FCC has ruled that the "capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" without human intervention in the calling process is the hallmark of an ATDS. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 2008*, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶13; *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517583, 18 F.C.C.R. 14014, ¶132 (Fed. Commc'n Cmm'n July 3, 2003) ("2003 TCPA Order").

18. Following Congress' directive, the FCC has expanded the definition of ATDS to include predictive dialers. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd 14014, 14092-93 (June 26, 2003) at ¶133.

19. The FCC also has reaffirmed and repeated its prior ruling that the term "capacity" requires present ability rather than future possibility, because a broad reading of the statute is required "to ensure that the restriction on autodialed calls not be circumvented." *In re Matters of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72 (July 10, 2015) ("2015 TCPA Order"), ¶19. Moreover "capacity" includes systems that include hardware and software that can be paired to function together to act as an ATDS, even where the equipment would not be able to do so separately. *Id.* at ¶10.

20. With respect to whether a device is considered an "automatic telephone dialing system" for purposes of the TCPA, the Ninth Circuit has specifically noted that "a system need not actually store, produce, or call randomly or sequentially generated numbers, it need only have the *capacity* to do it." *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) (emphasis added).

21. The FCC also ruled, "We also reject [the] argument that the Commission should

First Amended Complaint Complaint for Damages and Injunctive Relief

adopt a 'human intervention' test by clarifying that an autodialer is not an autodialer unless it has the capacity to dial numbers without human intervention. Because the Commission has previously rejected a restrictive interpretation of autodialer in favor of one based on a piece of equipment's potential ability, we find that [the] argument amounts to a simple variation on the 'present ability' arguments we reject above." 2015 TCPA Order at ¶20.

22. Enforcement of the TCPA is subject to a four-year statute of limitations pursuant to 28 U.S.C. §1658.

## FACTS

### A. NMAC Did Not Have Any Prior Relationship With Plaintiffs; NMAC Did Not Have Consent to Call Plaintiffs

23. In or about June 2014, an NMAC account holder, not a party to this action, obtained financing for a vehicle through NMAC (the "Borrower"). At some point thereafter, the Borrower fell behind on his payments to NMAC.

24. NMAC then proceeded to place multiple calls to the Plaintiffs an attempt to collect payment from the Borrower. NMAC did not have consent to do so. In fact, each Plaintiff was a total stranger to the transaction between Borrower and NMAC. None of the Plaintiffs were co-obligors on the financing.

### B. NMAC's Calls to Plaintiff Aram Terteryan ("Aram")

25. At all times relevant herein Aram had a cell phone, number XXX-XXX-4848, for which he was charged a monthly fee. At some time after the Borrower opened his account with NMAC, Aram became acquainted with the Borrower. The Borrower did not provide NMAC with Aram's name or cell phone number at any time. It is therefore unclear how NMAC even obtained Aram's contact information.

26. Nonetheless, NMAC somehow obtained Aram's contact information and, in an attempt to collect from the Borrower, NMAC used an ATDS to call Aram's cellular telephone number, XXX-XXX-4848.

27. In December of 2015, Aram received at least two calls to his cellular telephone from NMAC, including at least one voicemail, which demanded a return call. When he complied

with the demand, the NMAC representative indicated that the calls were attempts to locate and collect a debt from the third-party Borrower.

28. These unauthorized calls harmed Aram, because they caused him to suffer a nuisance and an invasion of privacy. Further, the calls wasted Aram's time and money, as they required him to take time out of his schedule to deal with them, they trespassed on his use of the phone for which he was charged a monthly fee, they used up space on his voicemail, and they depleted the battery on his cellular telephone.

29. At all times relevant, Aram was the sole subscriber or customary user of the cellular telephone number at issue. At no point did Aram provide prior express consent for NMAC to call his cellular telephone, nor did any third-party with "common authority" provide prior express consent.

30. None of the calls to Aram's cellular telephone were placed for an "emergency purpose" or with "prior express consent of the called party" within the meaning of 47 U.S.C. §227(b)(1)(A).

31. At all times relevant to this complaint, Aram maintained exclusive custody and control over the cellular telephone and number at issue.

**C.  NMAC's Calls to Plaintiff Tatyana Davtyan ("Tatyana")**

32. At all times relevant herein Tatyana had a cell phone, number XXX-XXX-9721, for which she was charged a monthly fee. Tatyana is the Borrower's mother. The Borrower did not provide NMAC with Tatyana's name or contact information as a reference at any time. It is therefore unclear how NMAC even obtained Tatyana's cell phone number.

33. Nonetheless, NMAC somehow obtained Tatyana's contact information and, in an attempt to collect from the Borrower, NMAC used an ATDS and prerecorded voice to call Tatyana's cellular telephone number, XXX-XXX-9721.

34. Tatyana received no less than 25 calls from NMAC to her cellular telephone that utilized a prerecorded voice and/or an ATDS beginning in or about August of 2015. Many times, if Tatyana did not answer her phone, NMAC would leave a voicemail using a prerecorded voice. Each voicemail using a prerecorded voice says exactly the same thing, which is as

follows:

> *YOU HAVE AN IMPORTANT MESSAGE FROM INFINITI FINANCIAL SERVICES. PLEASE RETURN OUR CALL AT 1-800-777-6116.*

35. These unauthorized calls harmed Tatyana because they caused Tatyana to suffer a nuisance and an invasion of privacy. Further, the calls wasted Tatyana's time and money, as they required her to take time out of her schedule to deal with them, they trespassed on her use of the phone for which she was charged a monthly fee, they used up space on her voicemail, and they depleted the battery on her cellular telephone.

36. At all times relevant, Tatyana was the sole subscriber or customary user of the cellular telephone number XXX-XXX-9721. At no point did Tatyana provide prior express consent for NMAC to call her cellular telephone, nor did any third-party with "common authority" provide prior express consent.

37. None of the calls to Tatyana's cellular telephone were placed for an "emergency purpose" or with "prior express consent of the called party" within the meaning of 47 U.S.C. §227(b)(1)(A).

38. At all times relevant to this complaint, Tatyana maintained exclusive custody and control over the cellular telephone and number at issue.

**D.    NMAC's Calls to Plaintiff Marine Davtyan ("Marine")**

39. At all times relevant herein Marine had a cell phone, number XXX-XXX-9764, for which she was charged a monthly fee. Marine is the Borrower's aunt. The Borrower may have provided NMAC with Marine's name and contact information as a credit reference at the time of the inception of the financing, but she has no independent business relationship with NMAC.

40. In an attempt to collect from the Borrower, NMAC used an ATDS and prerecorded voice to call Marine's cellular telephone number, XXX-XXX-9764.

41. Marine received no less than 20 calls from NMAC to her cellular telephone that utilized a prerecorded voice and/or an ATDS beginning in approximately August of 2015. Many

times, if Marine did not answer her phone, NMAC would leave a voicemail using a prerecorded voice. Each voicemail using a prerecorded voice says exactly the same thing, which is as follows:

> ***YOU HAVE AN IMPORTANT MESSAGE FROM INFINITI FINANCIAL SERVICES. PLEASE RETURN OUR CALL AT 1-800-777-6116.***

42. These unauthorized calls harmed Marine because they caused Marine to suffer a nuisance and an invasion of privacy. Further, the calls wasted Marine's time and money, as they required her to take time out of her schedule to deal with them, they trespassed on her use of the phone for which she was charged a monthly fee, they used up space on her voicemail, and they depleted the battery on her cellular telephone.

43. At all times relevant, Marine was the sole subscriber or customary user of the cellular telephone number at issue. At no point did Marine provide prior express consent for NMAC to call her cellular telephone, nor did any third-party with "common authority" provide prior express consent.

44. None of the calls to Marine's cellular telephone were placed for an "emergency purpose" or with "prior express consent of the called party" within the meaning of 47 U.S.C. §227(b)(1)(A).

45. At all times relevant to this complaint, Marine maintained exclusive custody and control over the cellular telephone and number at issue.

**E.     NMAC's Use of an ATDS**

46. NMAC used equipment that has or had the capacity to store or produce telephone numbers to be called, using random or sequential number generator and to dial such numbers, also known as an "automatic telephone dialing system," as defined by 47 U.S.C. §227(a)(1), to place calls and/or text messages to the cellular telephone number belonging to Plaintiff.

47. As such, NMAC employs persons tasked with the following jobs:

    a.     Monitoring effective predictive/preview dialer campaigns;

    b.     Analyzing dialer performance;

      c.      Creating dialer reporting systems;

      d.      Creating dialer configuration changes;

      e.      Developing day-to-day tactical calling plans;

      f.      Monitoring dialer campaigns; and

      g.      Developing predictive dialing strategies.

48. NMAC employed some or all of these practices when placing calls to the cellular telephone number belonging to Plaintiffs and the putative class members. Any human participation on the part of NMAC was incidental to the harvesting and storage of Plaintiffs' cell phone numbers and placement of the calls, and wholly immaterial to the capacity of NMAC's calling system.

49. NMAC's calls to Plaintiffs and the proposed class, by means of the use of an ATDS or pre-recorded calling system, without their consent, and for the purpose of collecting on debt they themselves did not owe, is an intrusion on seclusion that is highly offensive, and would be highly offensive to any reasonable person.

## INJURY IN FACT

50. Each of the plaintiffs and the class members had a legally protected privacy interest arising out of the TCPA to be free from unwanted calls and prerecorded messages to their cellular phones.

51. That privacy interest barred entities like NMAC from intruding upon the Plaintiffs' and the class members' privacy. Specifically, the TCPA barred NMAC from calling these individuals on their cellular phones using restricted technology, unless NMAC first obtained express consent.

52. Plaintiffs and the class members received calls directed at them by NMAC.

53. Those calls violated the individual rights of the Plaintiffs and the class members.

54. As such, the harms to the Plaintiffs and class members arose directly from the violation of their respective rights by NMAC.

55. These invasions of privacy caused frustration and annoyance by the Plaintiffs and class members, who had not consented to these intrusions caused by NMAC. The Plaintiffs and

class members have suffered an injury in fact.

## **CLASS ACTION ALLEGATIONS**

56. It is NMAC's policy and practice to place, in the course of business, calls using an ATDS and/or prerecorded voice to individuals whose cellular telephone numbers NMAC obtained as references, or even as mere acquaintances, for borrowers.

57. Therefore, Plaintiffs bring this class action on behalf of themselves and on behalf of all other persons similarly situated as members of the proposed class, pursuant to Federal Rule of Civil Procedure 23. This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

58. The proposed class consists of:

All persons in the United States:

    (a) to whose cellular telephones NMAC placed one or more non-emergency calls within the four (4) years prior to the filing of this complaint;

    (b) using an automatic telephone dialing system, or artificial or prerecorded voice;

    (c) who were not party to any agreement with NMAC; and

    (d) whom NMAC called regarding the account of another person.

59. The members of the class are so numerous that joinder of all claims would be impracticable. While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs allege that there are more than 40 members of the class.

60. There are questions of law and fact common to the class which predominate over any questions affecting individual class members. The predominant common questions include:

    (a) Whether NMAC used an ATDS, or an artificial or prerecorded voice within the meaning of the TCPA and applicable FCC regulations, to place calls to the class;

    (b) Whether the class members gave consent to be called by NMAC, since they were not party to any agreement with NMAC;

    (c) The means used by NMAC to identify class members as potential targets

for calls concerning NMAC's borrowers; and

      (d)    Damages, including whether the violations were negligent, willful or knowing.

61. Plaintiffs' claims are typical of the claims of the other members of the class. NMAC's conduct has caused Plaintiffs and members of the class to sustain the same or substantially similar injuries and damages. NMAC's conduct has caused each member of the class to suffer a nuisance or invasion of privacy, intrusion upon their seclusion and use of the cell phones for which they paid a subscriber fee. NMAC has acted in a uniform manner with respect to Plaintiffs and the other class members. Plaintiffs have no interests antagonistic to the interests of the other members of the class.

62. Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs are members of the class and do not have any conflict of interest with other class members. Plaintiffs have retained and are represented by competent counsel who are experienced in complex class action litigation and claims involving violations of the TCPA.

63. The nature of this action makes a class action the superior and appropriate procedure to afford relief for the wrongs alleged herein. There will be no difficulty in the management of this class action. The identity of the putative class, as well as the fact and time of calls made to putative class members, is ascertainable from electronic databases within NMAC's custody or control. Individualized litigation presents the potential for inconsistent or contradictory judgments. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**CLAIM FOR RELIEF**
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*)**

64. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

65. The TCPA provides that it is unlawful for any person to make a non-emergency call using an automatic telephone dialing system or an artificial or recorded voice to any cellular

phone service without prior express consent of the called party.

66. NMAC violated the TCPA by impermissibly placing calls to the cellular telephones of Plaintiffs and the members of the class using an ATDS or an artificial or prerecorded voice without their prior express consent.

67. Plaintiff and the members of the class have a legally protected interest in being free from the intrusion of autodialed calls and calls using an artificial or prerecorded voice. These unauthorized and offensive calls harmed Plaintiffs and the members of the proposed class, because they caused Plaintiffs and the members of the proposed class to suffer a nuisance and an invasion of privacy, all as more particularly described above. Such harm was fairly traceable to NMAC's violations of the TCPA.

68. NMAC has policies, practices or procedures of placing calls to cell phones using an ATDS or artificial or prerecorded voice regarding the collection of alleged debts, and for other purposes, without the prior consent of the called parties.

69. NMAC's violations were negligent, or alternatively, they were willful or knowing. 47 U.S.C. §312(f)(1).

70. That any subscriber to cell phone service should have to field calls for the debts of any family member, friend or mere acquaintance is offensive, and the very harm Senator Hollings referred to as the "scourge of modern civilization." Plaintiffs and the proposed class are precisely the persons sought to be protected by the TCPA, and are thus entitled to the full statutory remedies allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief::

A. Certify this matter as a class action under Rule 23(b)(2) and 23(b)(3).

B. Appoint the named plaintiffs as class representatives.

C. Appoint the undersigned as Class Counsel for the classes to be represented.

D. Award, statutory damages of $500 per violation determined to be negligent

E. Award statutory damages of $1,500 per violation determined to be willful;

F. Grant a declaration that NMAC's equipment and messages are regulated by the TCPA;

G. Enter an order enjoining NMAC from further violations of the TCPA; namely prohibiting NMAC from placing non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice to persons who had no personal business relationship with NMAC and thus had not given consent for such calls;

H. Grant costs of suit incurred herein;

I. Award reasonable attorneys' fees as part of a common fund, if any; and

J. Provide such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: June 15, 2016                    KEMNITZER, BARRON & KRIEG, LLP

By:     /s/ *Bryan Kemnitzer*
        BRYAN KEMNITZER
        NANCY BARRON
        ADAM J. McNEILE
        Attorneys for Plaintiff Aram Terteryan, Tatyana Davtyan, Marine Davtyan, and the putative class

        LYNGKLIP & ASSOCIATES, PLC

By:     /s/ *Ian Lyngklip*
        IAN LYNGKLIP
        Attorneys for Plaintiff Aram Terteryan, Tatyana Davtyan, Marine Davtyan, and the putative class

First Amended Complaint Complaint for Damages and Injunctive Relief