KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER          Bar No. 066401
NANCY BARRON             Bar No. 099278
ADAM J. McNEILE          Bar No. 280296
354 Pine St., 5th Floor
San Francisco, CA  94104
Telephone: (415) 632-1900
bryan@kbklegal.com
nancy@kbklegal.com
adam@kbklegal.com

Lyngklip & Associates, PLC
IAN LYNGKLIP             Bar No. P47173 (admitted pro hac vice)
24500 Northwestern Hwy #206
Southfield, MI 48075
Telephone:  (248) 208-8864
ian@michiganconsumerlaw.com

Attorneys for Plaintiff Aram Terteryan, Tatyana Davtyan, Marine Davtyan, and the putative class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM TERTERYAN, TATYANA DAVTYAN, and MARINE DAVTYAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs.<br><br>v.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>Defendant. | **Case No. 2:16-cv-02029**<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:  August 26, 2019**<br>**Time:  8:30 a.m.**<br>**Courtroom 9D – 9th Floor**<br>**Hon. George H. Wu** |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................... 1

II.   The Telephone Consumer Protection Act ............................................ 3

III.   PLAINTIFFS' ALLEGATIONS ............................................................ 5

IV.   STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT ...................................................................................... 6

V.   THE SETTLEMENT ............................................................................. 8

A.   The Settlement Class ........................................................................ 9

B.   Settlement Payment ........................................................................ 10

C.   Class Notice .................................................................................... 10

D.   Benefits of Settlement ................................................................. 101

E.   Scope of Release ........................................................................... 112

F.   Opportunity to Opt Out and Object .............................................. 12

G.   Class Representatives' Application for Incentive Award .............. 13

H.   Class Counsel's Application for Attorneys' Fees, Costs and Expenses ........ 13

I.   Cy Pres Distribution ...................................................................... 13

VI.   LEGAL ANALYSIS ............................................................................ 13

A.   The Proposed Class Satisfies the Requirements of Rule 23(a) ...... 14

1.   The requirement of numerosity is satisfied ............................... 15

2.   The requirement of commonality is satisfied. ........................... 15

3.   The requirement of typicality is satisfied. ................................ 16

4.   The requirement of adequate representation is satisfied ............ 17

B.   The Action Meets The Requirements Of Rule 23(B)(3). ............... 18

1.   Common Questions Predominate ............................................... 19

2.   This Class Action is Superior to Individual Suits ..................... 20

C.   This Settlement Meets The Requirements of Rule 23(e) ............... 21

1.   The Class Representatives and Counsel Have Adequately Represented The
Class ......................................................................................... 22

2.   The Settlement Was Negotiated At Arms Length ..................... 22

3.   The Relief for the Class Is Adequate ........................................ 22

4.   The Settlement Treats Class Members Equally .......................... 24

VII.   CONCLUSION ................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) ...............5

*Arata v. Nu Skin Int'l*, 96 F.3d 1265 (9th Cir. 1996)................................................7

*Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 629 (S.D. Cal. 2015).....20

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981) ..............................................8

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................7

*Erica P. John Fund, Inc. v. Halliburton, Co.*, 563 U.S. 804, 809 (2011) ...............19

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ....................................................18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...............................14, 20

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827(E.D.N.C. 1994)......................................................................................................7

*In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) .....................7

*In re Crocs, Inc. Secs. Litig.*, 2013 U.S. Dist. LEXIS 122593 (D. Colo. 2013) .......7

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) .........7

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997)....7

*In re Teletronics Pacing Sys., Inc.*, 137 F.Supp. 2d 985 (S.D. Ohio 2001) ..............7

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).........................17

*Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 80 (E.D.N.Y. 2007).......................................7

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) .........................5

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973)..................................................8

*Livingstone v. Toyota Motor Sales USA, Inc.*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995)..............................................................................................................7

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ......................................................................19

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)..............................14

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012) ...................................3

*Nelson v. Bennett*, 662 F. Supp. 1325 (E.D. Cal. 1987)............................................8

*O'Shea v. American Solar Solution, Inc.* 318 F.R.D. 633 (S.D. Cal. Mar. 2. 2017).4

*Offices for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..............7

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ...............................................18

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ........................4

*Smith v. Microsoft Corp.*, 297 F.R.D. 464 (S.D. Cal. 2014) ...................................20

*Stemple v. QC Holdings, Inc.*, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ...........4

*Stern v. DoCircle, Inc.*, 2014 WL 4866262 (C.D. Cal. Jan. 29, 2014) .....................4

*United States v. Hardage*, 982 F.2d1491 (10th Cir. 1993). ......................................6

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1983).................................................7

*Wolin v. Jaguar Land Rover N. Am., LLC.*, 617 F.3d 1168 (9th Cir. 2010). ..........19

**Rules**

Fed. R. Civ. P. 23.............................................................................................passim

# I.     INTRODUCTION

In this putative class action, Plaintiffs ARAM TERTERYAN, TATYANA DAVTYAN and MARINE DAVTYAN (each, an "Individual Plaintiff" and together, the "Class Representatives" or "Plaintiffs") assert that Defendant NISSAN MOTOR ACCEPTANCE Corporation ("NMAC") violated the Telephone Consumer Protection Act 47 U.S.C. § 227, *et seq.* (the "TCPA"). The TCPA prohibits calls and prerecorded messages to a person's cell phone using an Automatic Telephone Dialing System ("ATDS") without the prior express consent of the called party. The Plaintiffs are non-customers whom NMAC contacted as part of its efforts to collect on the account of a NMAC customer and had not consented to calls from NMAC. Plaintiffs allege that Nissan Motor Acceptance Corporation ("NMAC") used its auto-dialer to place those calls and conveyed prerecorded messages to third parties who had not consented to receive such calls (the "Litigation"). Plaintiffs allege that through analysis of NMAC's records, broad notice to class members, and a robust claims verification procedure, it is possible to provide notice to non-customer class members.

NMAC denies the allegations and, in fact, filed a Motion to Dismiss Plaintiffs' First Amended Complaint. That Motion was denied on November 17, 2016 [ECF No. 42]. NMAC maintained that it did not have a general practice of contacting non-customers in order to collect on customer accounts, and only contacted those third parties whose numbers had been provided as *bona fide* contact numbers by its own borrowers. Consequently, NMAC maintained that it was not possible to identify any non-customers who were inadvertently contacted as part of its collection efforts from the NMAC records.

Following the motion to dismiss, the parties engaged in extensive discovery and NMAC produced thousands of pages of documents. Plaintiffs deposed three NMAC witnesses. Additionally, Plaintiffs requested—and

1    ultimately moved to compel over objections—nine months of NMAC's call

2    data. This sample represented a significant percentage of call data. (ECF 74.)

3         By stipulation dated June 15, 2017, the parties agreed to continue with

4    discovery but also agreed to mediate with Judge Ronald M. Sabraw of JAMS.

5    [ECF 52]. The parties attended multiple mediation sessions with Judge Sabraw

6    over a period of nearly a year. During that mediation process the parties

7    exchanged what was agreed to be a representative a sampling of the data

8    ordered by Judge Stevenson and conducted independent analysis of the

9    potential class size using commercial data sources. Using data analysis from an

10   experienced class administrator, Plaintiffs' Counsel concluded that there were

11   sufficient members to certify a class, and that the likely size of the class

12   numbered in the thousands of class members. There remain significant disputes

13   between the parties as to the results of this data analysis. Nonetheless, following

14   arms-length settlement negotiations, in which the Class Representatives and

15   NMAC were represented by competent, experienced and informed counsel, the

16   Parties agreed to fully and finally resolve all claims and liabilities asserted in

17   the Litigation, without any admission of liability or wrongdoing on the part of

18   NMAC.[1]   That mediation spanned three separate sessions over the course of a

19   year, which the parties have memorialized on the Court's own docket. (*See* ECF

20   52, 76, 85, 87, and 92.). The Parties agreed on the terms and conditions

21

22

23

---

24   [1] As a matter of public policy, settlement is a strongly favored method for
     resolving disputes. *See Utility Reform Project v. Bonneville Power Admin*. 869

25   F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this.
     *See Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615 (9th Cir. 1982). As

26   a result, courts should exercise their discretion to approve settlements "in

27   recognition of the policy encouraging settlement of disputed claims." *In re
     Prudential Sec. Inc. Ltd. Partnerships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

28

memorialized in the Settlement Agreement attached as Exhibit 1 (the "Settlement Agreement").[2]

Pursuant to the terms of the Settlement Agreement and the Declaration of Bryan Kemnitzer (Exhibit 2), Plaintiffs request that this Court enter the Preliminary Approval Order in the form attached as Exhibit D to the Settlement Agreement and certify a class for settlement purposes only and;

1. Appoint Bryan Kemnitzer of Kemnitzer, Barron & Krieg LLP and Ian B. Lyngklip of Lyngklip & Associates, Consumer Law Center, PLC as Class Counsel;

2. Appoint the Individual Plaintiffs as the Class Representatives;

3. Approve the proposed plan of providing Notice to the Class; and,

4. Approve the proposed preliminary schedule for providing notice to the class and for class members to submit requests for exclusion or objections to the proposed settlement.

## II.     The Telephone Consumer Protection Act

Congress enacted the TCPA in 1991 in order to protect consumers from the serious invasion of privacy caused by unauthorized telephone calls from an ATDS or using prerecorded voice messages. Congress enacted this statute to protect recipients from the intrusion of receiving unwanted communications, as many consumers expressed outrage over the proliferation of automated telephone calls. *See Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012). Senator Hollins, the Act's sponsor, explained, "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

1  until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,

2  821-30, 822 (1991).

3      The Ninth Circuit has clarified that "[t]he TCPA was enacted to protect

4  the privacy interests of residential telephone subscribers by placing restrictions

5  on unsolicited, automated telephone calls to the home and to facilitate interstate

6  commerce by restricting certain uses of facsimile machines and automatic

7  dialers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir.

8  2009).

9      The TCPA prohibits the use of automated dialers and prerecorded

10  messages in nonemergency calls to cellular phones:

11      It shall be unlawful for any person within the United Stater, or any
       person outside the United States if the recipient is inside the United
12      States –

13      (A)   to make any call (other than a call made for emergency
             purposes or made with the prior express consent of the called
14           party) using an automatic telephone dialing system or an artificial
             prerecorded voice –
15                                         ***
16      (iii) to any telephone number assigned to a paging service, cellular
             telephone service, specialized mobile radio service, or other radio
17           common carrier service, or any service for which the called party
             is charged for the call.

18  47 U.S.C. § 227(b).

19      Courts within this Circuit have certified TCPA class actions which are

20  particularly well suited to class treatment due to the statutory damages and

21  common proofs relating to the use of ATDS systems and prerecorded messages.

22  *See*, *e.g.*, *Stern v. DoCircle, Inc.*, 2014 WL 4866262 (C.D. Cal. Jan. 29, 2014)

23  (certifying a TCPA class against online service company for sending

24  unauthorized text messages); *O'Shea v. American Solar Solution, Inc.* 318

25  F.R.D. 633 (S.D. Cal. Mar. 2. 2017) (certifying a TCPA class action against

26  solar company); *Stemple v. QC Holdings, Inc.*, 2014 WL 4409817 (S.D. Cal.

27  Sept. 5, 2014) (certifying TCPA class action against payday lender); *Abdeljalil*

28  *v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) (certifying TCPA

class action against bank); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) (certifying TCPA class action regarding unauthorized text messages); *see also Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under [47 U.S.C.] § 227, because the main questions . . . are common to all recipients."). The present case is ripe for class certification because NMAC's alleged common violations of law are applicable to all class members.

### III.   PLAINTIFFS' ALLEGATIONS

NMAC extends auto financing to consumers throughout the United States through its associated network of Nissan Dealers. A significant part of this business involves attempting to collect on accounts when those accounts become delinquent. NMAC has implemented standardized policies to locate borrowers who have fallen behind on their payments and can no longer be contacted using their direct contact information on file with NMAC. NMAC uses a variety of methods to re-establish contact, including using alternate contact numbers that have been provided to it by its client during its relationship, even though those contact numbers may not belong to its client or "skip tracing" their borrowers by scouring through public and private databases as well as social media to discover contacts of the borrower.  Throughout the servicing of accounts, NMAC receives contact information from its customers. When NMAC customers provide telephone number(s) on which NMAC may reach them, those telephone numbers are added into NMAC's servicing system. It is possible that some newly obtained telephone numbers belong to third parties who are not customers of NMAC, despite having been provided by NMAC customers. In the event the customer falls behind, NMAC initiates calls to the available numbers on that customer's account - which may include those of third parties. Throughout this process NMAC uses its auto-dialing and pre-

1  recorded messaging technology in order to collect on the account, even though
2  third parties may not have consented to receive those calls.

3       None of the three named Plaintiffs had an account with NMAC nor
4  granted consent for it to call them on their cell phones. Rather, NMAC obtained
5  the phone numbers of each of the Plaintiffs while seeking contact information
6  for the borrower. Nonetheless, NMAC called them on their cell phones using its
7  auto dialer. Additionally, it left prerecorded messages on the cell  phones of
8  Marine and Tatianna Davtyan.  Plaintiffs filed this class action because of
9  NMAC's alleged standardized practice of telephoning third parties for whom it
10 had not obtained consent to call. Plaintiffs' class action complaint sought relief
11 for themselves and a putative class of third parties.

12      NMAC denies any liability or wrongdoing of any kind and has
13 vigorously defended the Litigation. NMAC specifically denies using the
14 technology regulated by the TCPA or contacting numbers for which it had no
15 consent. Additionally, it also denies that any claims asserted in the Litigation
16 were appropriate for class treatment.

17 **IV.    STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION**
18 **SETTLEMENT**

19      The approval of a proposed settlement of a class action suit is a matter
20 within the broad discretion of the trial court. *United States v. Hardage*, 982
21 F.2d1491, 1495 (10th Cir. 1993).

22      Courts have also noted that the standard for preliminary approval is less
23 rigorous than the analysis at final approval. *See, e.g., Crocs*, 2013 U.S. Dist. 23
24 LEXIS, at *10-11; *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 80 (E.D.N.Y. 2007);
25 *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825,
26 827(E.D.N.C. 1994) (holding that the issue at preliminary approval is whether
27 there is probable cause to justify notifying the class members of proposed
28

settlement); *In re Bromine Antitrust Litig*., 203 F.R.D. 403, 416 (S.D. Ind. 2001) obtaining preliminary approval of class action settlement is low).

The Court in its May 10, 2019 Order [Dkt. No. 104] requested that Plaintiffs address the amended Federal Rule of Civil Procedure 23(e)(1) and (2) ("Rule 23"). The amended Rule 23 now explicitly includes a list of factors courts should consider in determining whether a proposed class settlement is fair, reasonable, and adequate. Those factors are whether (1) class representatives and class counsel have adequately represented the class, (2) the proposed settlement was negotiated at arm's length, (3) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims, the terms of any proposed award of attorney's fees, and any agreement required to be identified under Rule 23(e)(3), and (4) the settlement proposal treats class members equitably relative to each other. Plaintiffs previously addressed these factors in the original Motion (without explicitly noting the new rules), and have expanded on them in the instant Motion.

Nonetheless, in considering a potential settlement, the trial court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute (*City of Detroit v. Grinnell Corp*., 495 F.2d 448, 456 (2d Cir. 1974)) and need not engage in a trial on the merits. *See Offices for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982).[3] The relevant inquiry is

---

[3] Various District Courts across the country have also followed this analysis in deciding whether preliminary approval is appropriate. *See Arata v. Nu Skin Int'l*, 96 F.3d 1265, 1268-69 (9th Cir. 1996) (noting, in approving settlement that 'district court evaluated the proposed settlement and granted preliminary approval...in accordance with the procedures outlined in the Manual for Complex Litigation"); *Livingstone v. Toyota Motor Sales USA, Inc*., 1995 U.S. Dist. LEXIS 21757, at *23-24 (N.D. Cal. 1995) (preliminary approval recommended where special master concludes that proposed settlement "[fell] within the range of possible approval" because "(a) the negotiations occurred at arm's-length; (b) there was sufficient discovery; [and] (c) the proponents of the settlement are experienced

"to [weigh] the likelihood of success on the merits against the amount and form of the relief offered  in the settlement." *Williams v. Vukovich,* 720 F.2d 909, 922 (6th Cir.1983) (*citing to Carson v. American Brands, Inc*., 450 U.S. 79, 88 (1981)). In evaluating a settlement in this type of litigation, courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (footnote omitted). Thus, compromise is particularly appropriate. *Nelson v. Bennett*, 662 F. Supp. 1325, 1334 (E.D. Cal. 1987).

Here, although NMAC did not prevail on its Motion to Dismiss, its defenses and the practical difficulties associated with locating class members present litigation risks that make it appropriate for the individual Plaintiffs to seek a negotiated resolution. Such defenses include defenses on the merits to the TCPA claims as well as defenses to class certification. Thus, the settlement ensures Class Members receive some relief instead of nothing.

## V.    THE SETTLEMENT

The settlement ultimately reached includes a comprehensive mechanism for notifying non-customers who were allegedly called by NMAC and allowing those persons to receive compensation upon confirmation by the class administrator that they have a valid claim. The parties have established a multi-faceted notice program, which not only provides for direct mailing of notice to persons who appear to have been non-customers, but also provides for publication and internet advertising to reach persons who are not readily identifiable through the direct mailing process. Finally, the parties have provided for a "claims made" process to insure that only qualified individual

in similar litigation"); *In re Teletronics Pacing Sys., Inc.*, 137 F.Supp. 2d 985, 1015-1016 (S.D. Ohio 2001) (same, citing MANUAL FOR COMPLEX LITIGATION, § 30.44 (2d ed. 1985); *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (same); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) (same).

participate in the class settlement, which is anticipated to result in distributions which are fair and reasonable.

**A.   The Settlement Class**

The "Class" consists of:

> *All persons in the United States to whose cellular telephones NMAC placed one or more non-emergency Calls between March 24, 2012 and the date of preliminary approval using equipment that constitutes or may constitute an automatic telephone dialing system or an artificial or prerecorded voice during the Class Period and who were not a party to any agreement with NMAC.*

Plaintiffs will endeavor to identify and provide notice to class members as follows:   Within 30 days of preliminary approval, NMAC will provide Plaintiffs a complete list cell phone numbers it called during the class period on the alleged ATDS; Plaintiffs will obtain the names and addresses of the persons who likely received calls to these numbers by subpoena to the cell phone carriers; that list will be provided to NMAC which will purge the list of all NMAC customers, leaving a class list of individuals whom Plaintiffs contend likely did not provide consent to calls (the "Notice List."). This process will take an estimated maximum of 90 days. Plaintiffs will also publish the notice and engage in internet advertising to reach class members who may not be identified through the above process. Persons will validate class membership by asserting under penalty of perjury that they received a call on their cell phone from NMAC in the class period and they were not a customer of NMAC.

To receive payment, class members must submit a valid and timely claim form through the settlement website, by U.S. Mail, or through the toll-free telephone number, by the claims deadline. To be eligible for a claim payment, the claimant must provide a cell phone number which NMAC called during the class period and the claimant cannot have been an NMAC customer.

## B.  Settlement Payment

Within ten (10) days of the Court's preliminary approval of the settlement, NMAC will pay the sum of Two Million Two Hundred Thousand Dollars ($2,200,000.00) (the "Settlement Fund") into a qualified settlement fund managed by a class administrator jointly approved by the Parties. This amount will be used, for amounts paid to Settlement Class members; notice costs; incentive awards; attorneys' fees; administrative fees; and, litigation costs. [Settlement Agreement, Section 4 & 5.]   Upon final approval and expiration of the appeal period, the Class Administrator will distribute the entire Settlement Fund that remains after deducting the cost of administration, notice, fees and costs. Class Members whose claims are determined to be valid will each receive a pro rata portion of the Settlement Fund.

## C.  Class Notice

The Claims Administrator will send notice of the settlement by first class mail to every person included on the Notice List.  Plaintiffs, Class Counsel, and/or the Class Administrator shall also cause notice of the pendency and settlement of the Action to be published in USA Today, and may also provide notice by website, online banner advertising, and in such other manners that are reasonably calculated to reach absent class members.

The broad notice provided for by the Settlement is consistent with what courts have approved in other "wrong number" TCPA settlements.[4]

---

[4] See *Lavigne v. First Cmty. Bancshares, Inc.*, No. 15-00934-WJ/LF, 2019 U.S. Dist. LEXIS 37724, at *7-8 (D. N.M. Mar. 7, 2019). (approving reverse look up class notice plan in a certified wrong number class action); *Kreger v. Medicredit, Inc.*, No. 16-1481-T-33JSS, 2016 U.S. Dist. LEXIS 93889, at *6-7 (M.D. Fla. July 19, 2016) (holding reverse lookup and publication notice in print and on the internet was "the best notice practicable under the circumstances") (quoting *Prater v. Medicredit, Inc.*, No. 14-00159-ERW, 2015 U.S. Dist. LEXIS 167215 (E.D. Mo. Dec. 7, 2015)); *Reid v. I.C. Sys.*, No. 12-02661-PHX-ROS, 2018 U.S. Dist. LEXIS 125663, at *9 n.2 (D. Ariz. July 26, 2018) (upholding notice plan that called for

## D. Benefits of the Settlement

The benefits available to class members will depend on how many come forward to show they were non-customers called by NMAC. Based on their analysis of the sample data, class counsel estimate that recovery will range from $75 to $250 per class member—perhaps higher, if non-customer calls were as infrequent as NMAC claims. Even at the lower end of the estimated range, the settlement compares favorably with similar settlements.[5]

The estimated settlement range also compares favorably with the $500 penalty for violation of the TCPA. Given (a) the risks involved in class certification; (b) divergent judicial decisions regarding the meaning of ATDS, and whether the dialer used by NMAC is subject to the statute; (3) the FCC's

---

"publication of banner ads on targeted websites, the issuance of a press release, the establishment of a website and toll-free number, and the sending of targeted emails to potential class members' email addresses identified through a 'reverse lookup' of telephone numbers belonging to suspected class members.").

[5] *See, e.g., Martinez v. Medicredit, Inc*., No. 16-1138-ERW (E.D. Mo.), Dkt. No. 93, Dec. 5, 2017 (prelim. approval mot.) and Dkt. No. 105, May 15, 2018 (approving settlement that provided $5,000,000 for 627,642 unique cellular numbers, or $7.79 per number); *Gutierrez-Rodriguez v. Progressive Mgmt. Sys*., No. 16-00182 (S.D. Cal.), Dkt. No. 67, Mar. 26, 2018 (approving settlement that provided $1,500,000 for approximately 61,939 unique cellular telephone numbers, or $24.21 per number); *James v. JPMorgan Chase Bank, N.A*., No. 15-02424 (M.D. Fla.), Dkt. No. 51 (prelim. approval mot.) and Dkt. No. 58, June 5, 2017 (approving settlement that provided $3,750,000 for approximately 675,000 unique cellular numbers, or $5.56 per number); *Lofton v. Verizon Wireless*, No. 13-05665 (N.D. Cal.), Dkt. No. 207-1, Apr. 14, 2016 (motion for final approval of class settlement that provided $4,000,000 for approximately 242,666 potential class members, or $16.48 per member), and Dkt. No. 217, May 27, 2017 (approving settlement); *Jonsson v. USCB, Inc*., No. 13-8166 (C.D. Cal.), Dkt. No. 64, Sept. 12, 2014 (prelim. approval mot.), Dkt. No. 83, May 28, 2015 (approving settlement that provided $2,500,000 for 621,278 unique cellular telephone numbers which included both customer and alleged non-customer numbers, or $4.43 per number).

active consideration of both the definition of an ATDS and whether businesses can be held liable for calls to reassigned cell numbers.[6]

**E.   Scope of Release**

The Parties desire and seek Court approval of the settlement and a final judgment and order dismissing with prejudice the Individual Plaintiffs' and Class Members' claims as set forth in this Settlement Agreement. The scope of the release by all Class Members (other than those who exclude themselves from the Settlement) covers the claims that arise out of or relate to the Released Parties' alleged use of an "automatic telephone dialing system" or "artificial or prerecorded voice" to contact or attempt to contact Class Members during the class period, as fully set forth in the Release of Claims. [Settlement Agreement, Section 13.02]. This release is narrowly tailored to resolve the present dispute concerning the use of the technology regulated by the TCPA and does not release claims beyond the scope of the claims asserted in this case. The release for the Class Representatives is broader [Settlement Agreement, Section 13.03 & 13.04], but does not present any conflict for the class.

**F.   Opportunity to Opt Out and Object**

Under the terms of the proposed Settlement, Class members will have the right to opt out of the Settlement or object to its terms. [Settlement Agreement, Section 10.02]. The deadline for doing so is within 60 days of the Settlement Notice date. [Settlement  Agreement, Section 2.28 & 2.29].     Class  members will be informed of these rights through the Settlement Website and the mailed

---

[6] *See, e.g.,* FCC CG Docket Nos. 18-152 & 02-278; Fed. Reg. Vol. 83, No. 109 (June 6, 2018) avail. at: https://www.govinfo.gov/content/pkg/FR-2018-06-06/pdf/2018-12084.pdf ("Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision.").

notice, and information available by calling the Toll-Free Number. [Settlement Agreement, Section 8.05 & 8.06].

**G.   Class Representatives' Application for Incentive Award**

The Individual Plaintiffs will apply to the Court for an incentive award of $10,000.00 each for the Individual Plaintiffs' service as Class Representatives. [Settlement Agreement, Section 5.04].

Any incentive award approved by the Court will be paid out of the Settlement Fund.

**H.   Class Counsel's Application for Attorneys' Fees, Costs and Expenses**

Class Counsel shall move the Court for an award of attorney's fees and costs [Settlement Agreement, Section 5.02 & 5.03]. Any award of fees and costs approved by the Court shall be paid from the Settlement Fund. [Id.]. Class Counsel will ask the Court to award attorneys' fees and costs equal to one-third of the amount of the Settlement Fund, as approved by the Court. [Id.].

**I.   Cy Pres Distribution**

Any money remaining from uncashed checks will be paid to a Cy Pres recipient mutually agreed to by the Parties, and approved by the Court. The Parties have agreed to propose The Samuelson Law Clinic, an experiential clinic at the University of California, Berkeley School of Law. The award will be used to provide hands-on training to law students through real-world work, with live clients, on cutting-edge policy issues in support of the public's interest in technology law and policy. [Settlement Agreement, Section 7.10].

## VI.   LEGAL ANALYSIS

Judicial policy strongly favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23(e) requires court approval for settlement of class claims.

The approval of a class action settlement requires a two-step process. *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). First, the

Court conditionally certifies the class and grants preliminary approval of the settlement. Second, after the settlement is preliminarily approved and notice of the settlement is provided to the class, the Court conducts a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation (4th ed. 2004) § 21.632; *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The instant Motion is submitted in support of the first step of the settlement approval process.

## A.   The Proposed Class Satisfies the Requirements of Rule 23(a)

Before granting preliminary approval of a settlement, the Court must determine that the proposed class can be certified for settlement purposes. *See* Manual for Complex Litigation (4th Ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Certification is appropriate where the proposed class and the proposed class representatives meet four prerequisites of Rule 23(a) – (i) numerosity; (ii) commonality; (iii) typicality; and, (iv) adequacy of representation. These are generally referred to as numerosity, commonality, typicality, and adequacy. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). In addition, one of the three requirements of Rule 23(b) must also be met. Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.  The requirement of numerosity is satisfied.**

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." *Coleman v. Recontrust Co. N.A.*, 2012 U.S. Dist. LEXIS 53928, at *8 (D. Utah 2012) citing to Fed. R. Civ. P. 23(a)(1). Generally, the numerosity requirement is satisfied when the class is comprised of 40 or more members. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)("Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members"); *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed at level of 40 members)  In this case, the class has been estimated to potentially consist of at least 10,000 individuals. Plaintiffs arrived at the estimated class size based on their review of NMAC's dialer records for a period of nine months during the class period, which Plaintiffs cross-checked with publicly available data and provided back to NMAC to identify phone numbers which could be eliminated as being associated with NMAC customers. Based upon Plaintiffs' investigation, this putative class action exceeds the numerosity threshold. Thus, the proposed class meets the first prerequisite of Rule 23 for settlement purposes.

**2.  The requirement of commonality is satisfied.**

The second prerequisite to class certification is the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). Commonality can be established by showing "that the class is united by a common interest." *See Blackie v. Barrack*, 524 F.2d 891, 901 (1975) (holding that "slight differences in class members' positions" will not defeat commonality). A single common question will satisfy commonality. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

In this case, as with other ATDS and pre-recorded voice class actions, Plaintiffs' and the putative class's claims arise from a single common core set of facts and issues: whether NMAC violated the TCPA by calling individuals who had no relationship to the NMAC account at issue, using either a prerecorded voice or an ATDS. Specifically, the following questions and answers are common to each and every class member, and which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes, supra,* 564 U.S. at 350.

a. Does NMAC's phone system have the capacity to operate as an ATDS?
b. Does NMAC use pre-recorded voice messages to make calls to class members?
c. Did NMAC fail to obtain prior express consent from all class members?
d. Did NMAC call all class members on their cell phones?
e. Do all class members' cellular telephone numbers appear in NMAC's records?
f. Did all class members suffer the same injury?

These common questions lie at the core of this case, therefore, the commonality requirement of Rule 23(a)(2) is satisfied.

**3. The requirement of typicality is satisfied.**

The third prerequisite to class certification is that the named plaintiff's claims are typical of the class. Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983). The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), quoting *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D. Cal. 1985). *See also Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 642 (D. Utah

1988); *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1998); *In re United Energy Corp. Solar Power Modules Tax Shelter Ivs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). "Typicality in this context means that the representative claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Lee v. Glob. Tel\*link Corp.*, Case No. 2:15-cv-02495-ODW(PLAx), at \*8 (C.D. Cal. Apr. 7, 2017) (citing *Hanlon, supra* 150 F.3d at 1020).

In this case, the named Plaintiffs present precisely the same claims as asserted by the Class. None of the Plaintiffs or the class members have accounts with NMAC, and none consented to calls. Each was called using the NMAC's alleged ATDS and each will seek statutory damages under the TCPA. Neither the Plaintiffs nor the class member seek any actual damages which would require individualized proofs or mini trials. Rather, all claims and damages can be resolved using the electronic records to be submitted in this case. All have suffered the same alleged injury and all seek precisely the same remedy. Because the claims of the named Plaintiffs mirror those of the class members, the Court should find that the claims of the named Plaintiffs are typical of the class members and certify this matter as a class action under Rule 23.

**4. The requirement of adequate representation is satisfied.**

The final requirement of Rule 23(a) is that the representative plaintiff(s) will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and that plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185.[7]

---

[7] *See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

In this case, the class representatives and proposed class all received calls to their cell phones from NMAC using the its alleged ATDS and they did not consent to the calls. The class representatives and the class thus all share the common interest in obtaining the relief to which they are entitled. Because these named Plaintiffs share the same claims as the class members, the interests of the named Plaintiffs coincide with the general interests of the class members. More specifically, the named Plaintiffs seek statutory damages as the result of NMAC's alleged unlawful use of its ATDS and prerecorded messages. Given the identical nature of the claims between named Plaintiffs and the class members, there is no potential for conflicting interests in this action and no antagonism between the interests of the named Plaintiff and those of the class.

At the same time, the named Plaintiffs' have selected qualified Counsel to represent the class. Counsel have represented consumers in numerous class actions. Counsel Ian Lyngklip has participated in numerous nationwide classes in federal Court under the Federal Consumer Credit Protection Act, 15 U.S.C. 1601 *et seq.,* as well as the TCPA, including several multidistrict litigation matters. (Declaration of Ian Lyngklip, Exhibt 3). Counsel Bryan Kemnitzer has served as counsel in dozens of consumer class action cases within the state of California. (Declaration of Bryan Kemnitzer, Exhibit 2). This record evidence establishes the adequacy of the named Plaintiffs and the law firms of Kemnitzer, Barron & Krieg, LLP and Lyngklip & Associates Consumer Law Center, PLC to represent the class in this case. The Court should find that the Plaintiffs have satisfied Rule 23's requirement of adequate representation and certify the proposed class.

## B.   The Action Meets The Requirements Of Rule 23(B)(3).

Once the four requirements of Rule 23(a) are met, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992); *see also General Tel. Co. v. Falcon*, 457 U.S.

147 (1982). Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to class members predominate over any questions affecting only individual members, and [...] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**1. Common Questions Predominate**

The predominance inquiry of Rule 23(b)(3) asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). When determining whether common questions of law and fact predominate, the Court begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton, Co.,* 563 U.S. 804, 809 (2011). A putative class action satisfies predominance when the allegations were susceptible to proof by generalized evidence. *Wolin v. Jaguar Land Rover N. Am., LLC.*, 617 F.3d 1168, 1173 (9th Cir. 2010).

In this case, the named Plaintiffs assert claims under the TCPA. That statute requires Plaintiffs to prove (1) that NMAC called class members' cell phones; (2) using an ATDS; (3) for a non-emergency purpose. Each of the Plaintiffs and the class members are third parties – individuals who owe no outstanding obligation to NMAC – and whom Plaintiffs contend NMAC had no authorized purpose for conveying prerecorded messages or calling with an autodialer. Plaintiffs contend that NMAC added these phone numbers to its calling database without the consent of the subscribers of these phones and placed those numbers in queue for calls from NMAC's dialer and for delivery of prerecorded messages. Plaintiffs further believe that this information can be confirmed using common evidence that compares the identity of the phone subscriber to NMAC's customer list.

This assembled list of non-consumers who received calls would operate as common proof of class membership. As such, the named Plaintiffs may put forward generalized proof concerning NMAC's use of an ATDS in calls to the class members' cell phones and the damages suffered by the class. Because the claims and theories of recovery are the same as to the named Plaintiffs and class members, the Court should find that class issues predominate over any individual issues.

**2. This Class Action is Superior to Individual Suits**

Rule 23(b)(3) requires a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." This superiority requirement acts "to assure that the class action is the more efficient and effective means of resolving the controversy." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure, § 1779 at 174 (3d ed. 2005). Whether the class action mechanism is superior requires "a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). When numerous individual claims for small sums would "not only unnecessarily burden the judiciary, but would [also] prove uneconomic for potential plaintiffs [and] litigation costs would dwarf potential recovery," a class action is superior. *Id.* Where the cost of litigating individual claims outweighs the potential recovery, that disparity provides "the most compelling rationale for finding superiority in a class action." *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 629 (S.D. Cal. 2015) citing *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468–69 (S.D. Cal. 2014).

Given the statutory penalty of $500 and the fact that the TCPA does not provide for statutory attorneys' fees, few attorneys would accept cases involving the relatively small recoveries presented by the class members in the absence of those fees. At the same time, the filing fees and costs of prosecuting

1   the claims would likely outstrip any potential recovery, and that is before
2   attorneys' fees or expert costs. In the event that the class members each sought
3   to file claims, the individual cases would burden the judicial system with
4   numerous cases and repetitive discovery. Under these circumstances, the class
5   remedy represents the superior (if not the only) viable remedy for the class
6   members. The cost of pursuing individual cases far outweighs the potential
7   benefits of a potential individual recovery. As such, the Court should find that
8   class mechanism is superior to other means of resolving the class disputes and
9   certify this matter as a class action under Rule 23(b)(3).

10  **C.  This Settlement Meets The Requirements of Rule 23(e)**

11      "The new Rule 23 clarifies that preliminary approval should only be
12  granted where the parties have 'show[n] that the court will likely be able to ...
13  approve the proposal under [the final approval factors in] Rule 23(e)(2)' and
14  'certify the class for purposes of judgment on the proposal.' Fed. R. Civ. P.
15  23(e)(1)(B)." *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *4 (N.D.
16  Cal. Mar. 29, 2019).

17      The Court should consider the factors informing final approval, namely,
18  whether:

19      (A)  the class representatives and class counsel have adequately
20  represented the class;

21      (B) the proposal was negotiated at arm's length;

22      (C) the relief provided for the class is adequate, taking into account:

23          (i) the costs, risks, and delay of trial and appeal;

24          (ii) the effectiveness of any proposed method of distributing relief
25  to the class, including the method of processing class-member claims;

26          (iii) the terms of any proposed award of attorney's fees, including
27  timing of payment; and

28

1    (iv) any agreement required to be identified under Rule 23(e)(3);

2    and

3    (D) the proposal treats class members equitably relative to each other.

4    Fed. R. Civ. P. 23(e)(2).

5    Here, the settlement meets the above criteria, as set forth below and

6    elsewhere in this Motion.

7    **1.  The Class Representatives and Counsel Have Adequately Represented**

8    **the Class.**

9    For the same reasons set forth in Section VI.A.4, *supra*, the Class

10   Representatives and Counsel are adequate representatives of the Class. As set

11   forth in the Kemnitzer Declaration, Plaintiffs engaged in extensive discovery

12   prior to agreeing to settle this matter. [Kemnitzer Dec., ¶¶4-5.]

13   **2.  The Settlement Was Negotiated At Arm's Length.**

14   This settlement is the culmination of three mediations, numerous rounds

15   of settlement negotiations, and contentious litigation that has lasted more than

16   three years. NMAC vigorously defended Plaintiffs' claims, while Plaintiffs

17   pursued their claims to the fullest extent possible. Following an agreement to

18   settle the matter, Parties exchanged numerous drafts of a memorandum of

19   understanding, which culminated in a final settlement agreement after months

20   of subsequent negotiations. [Kemnitzer Dec., ¶¶4-5, 7-8.]

21   The facts of the settlement negotiations of this case demonstrate that the

22   settlement unquestionably was negotiated at arms' length.

23   **3.  The Relief for the Class Is Adequate.**

24   The benefits available to class members are set forth in Section V.D.,

25   *supra*. The settlement agreement reached by the parties is fair, adequate and

26   reasonable and falls within the range of reasonable settlements. Based upon

27   data exchanged during the mediation, the parties expect that the distribution to

28   the proposed class will range between $75 and $250, though actual numbers

will vary based upon participations rates. This estimated settlement range compares very favorably with other "wrong number" settlements, and with the $500 penalty for violation of the TCPA. Because the relief to the class compares favorably with the results of other similar TCPA class actions, as set forth in that same section, the relief is adequate.

In this case, the risks Plaintiffs would face in litigating their case are substantial, particularly so in light of:

➢ the inherent risks involved in class certification and litigation;

➢ divergent judicial decisions regarding the meaning of ATDS, and whether the dialer used by NMAC is subject to the statute;

➢ the FCC's ongoing and active rulemaking, and ongoing petitions to FCC requesting consideration of both the definition of an ATDS and other legal issues which are pending before courts.

Further, the Parties have identified the most effective way to provide the relief to class members, who will self identify through a notice process set forth in Section V.C., *supra*. The Parties have prepared a claim form, attached to the Settlement Agreement as Exhibit A, to make it as easy as possible for class members to complete correctly. Further, the Parties have identified and will retain a class administrator, KCC, who is experienced in administering and distributing settlements in large-scale TCPA class actions.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method in awarding attorneys' fees. . . . Because the benefit to the class is easily quantified in common-fund settlements, courts may award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at

*13 (N.D. Cal. Mar. 29, 2019) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)) (internal quotations omitted).

Here, Plaintiffs' attorneys are seeking a recovery of one third of the $2.2 million Settlement Fund, a slight increase over the standard 25% recovery, or $733,333.33. In sum, Plaintiffs' attorneys have already spent more than $775,000 in fees and costs prosecuting this case, not including time spent by Ian Lyngklip's firm. [Declaration of Bryan Kemnitzer, ¶12, Exh. A.]. Thus, by a lodestar cross-check analysis, this result is fair and equitable. In fact, the fee request presents a negative multiplier, which courts have held "suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007).

**4. The Settlement Treats Class Members Equitably.**

The relief that the Settlement Agreement contemplates is set forth in Section V.D., *supra*. The settlement provides the same relief to every class member. No person is treated differently, with the exception of Class Representatives, who would receive a proposed $10,000 service award, subject to Court approval. The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement unfair or unreasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). When Plaintiffs formally apply for their incentive awards, they will provide evidence supporting their request for $10,000 service awards under the factors set forth in *Staton*.

## VII.   CONCLUSION

The proposed class satisfies all the requirements to be maintained as a class action. As to Rule 23(a), the class is numerous, cohesive and common remedies are sought under a common set of proofs; and the class representatives have selected competent counsel with no adverse interests. Additionally, the

1  predominant issues and small amount of individual claims at issue common
2  remedies, and proofs, render this claim under the TCPA uniquely well-suited
3  for class treatment under Rule 23(b)(3).

4         All told, the settlement in this case presents all the hallmarks of an arms-
5  length agreement reached after vigorous litigation, discovery disputes, and
6  extensive negotiation conducted under the supervision of a qualified mediator.
7  The release has been narrowly tailored to the claims in this case and does not
8  seek to release claims beyond those at issue in this case. The notice provided is
9  by first class mail with publication both in print and electronic form. As such,
10  the notice proposed constitutes the best notice practicable under the
11  circumstances and satisfies dues process.

12         For these reasons, Plaintiffs respectfully request that the Court enter the
13  Preliminary Approval Order and:

14    a. conditionally certify the Class for settlement purposes only and appoint
15       Class Counsel as counsel for the Class for settlement purposes only;
16    b. preliminarily approve the Settlement and this Agreement as fair, adequate
17       and reasonable, and within the reasonable range of possible final approval;
18    c. approve the form(s) of Notice and find that the notice program set forth
19       herein constitutes the best notice practicable under the circumstances, and
20       satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;
21    d. set the date and time for the Final Approval Hearing, which may be
22       continued by the Court from time to time without the necessity of further
23       notice; and,
24    e. set the Claims Deadline, the Objection Deadline and the Opt-Out Deadline.

25  Dated:  July 19, 2019              KEMNITZER, BARRON & KRIEG LLP

26

27                           By:     /s/ Bryan Kemnitzer
28                                   BRYAN KEMNITZER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NANCY BARRON
ADAM J. McNEILE
KEMNITZER BARRON & KRIEG, LLP
445 Bush St., 6th Floor
San Francisco, CA  94108
Telephone: (415) 632-1900

IAN LYNGKLIP
LYNGKLIP & ASSOCIATES, PLC
24500 Northwestern Hwy #206
Southfield, MI 48075
Telephone: (248) 208-8864
[*Admitted Pro Hac Vice*]

Attorneys for:
ARAM TERTERYAN, TATYANA DAVTYAN,
and MARINE DAVTYAN,
and the putative class

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT