1   KEMNITZER, BARRON & KRIEG, LLP
    BRYAN KEMNITZER          Bar No. 066401
2   KRISTIN KEMNITZER        Bar No. 278946
    ADAM MCNEILE             Bar No. 280296
3   42 Miller Ave., 3rd Floor
    Mill Valley, CA 94941
    Telephone: (415) 632-1900
4   Facsimile: (415) 632-1900
    bryan@kbklegal.com
5   kristin@kbklegal.com
    adam@kbklegal.com
6
    LYNGKLIP & ASSOCIATES, PLC
7   IAN LYNGKLIP             Bar No. P47173
    24500 Northwestern Hwy #206
    Southfield, MI 48075
8   Telephone: (248) 208-8864
    ian@consumerlawyers.com
9
    Admitted *Pro Hac Vice*
10
    Attorneys for Plaintiffs Aram Terteryan, Tatyana Davtyan, Marine Davtyan, and the putative
11  class

12

13

14                        UNITED STATES DISTRICT COURT

                         CENTRAL DISTRICT OF CALIFORNIA
15
                                WESTERN DIVISION
16

17  ARAM TERTERYAN, TATYANA              **Case No. 2:16-cv-02029-GW-KS**
    DAVTYAN, and MARINE DAVTYAN,
    individually and on behalf of all others   CLASS ACTION
18  similarly situated,

19                      Plaintiffs.          **PLAINTIFFS' MOTION FOR AWARD**
                                             **OF ATTORNEYS' FEES, COSTS, AND**
                                             **EXPENSES, AND SERVICE AWARDS**
20          v.                               **AT FINAL APPROVAL**

21  NISSAN MOTOR ACCEPTANCE             **Date:  August 22, 2022**
    CORPORATION,                        **Time:  8:30 a.m.**
                                        **Courtroom 9D – 9th Floor (1st St.)**
22                      DEFENDANT       **Hon. George H. Wu**

23                                    /

24

25

Table of Contents

I.      INTRODUCTION ........................................................................ 3

II.     STATEMENT OF THE CASE ........................................................ 4

III.    GENERAL DESCRIPTION OF CLASS COUNSEL'S SERVICES TO THE CLASS .... 4

IV.     MEDIATION ............................................................................. 6

V.      EFFORTS TO IDENTIFY CALL RECIPIENTS/POTENTIAL CLASS MEMBERS ..... 7

        (a) Carriers' Response to Subpoenas ....................................... 7

        (b) Cooperation of the Parties .............................................. 8

        (c) Compilation of Notice Class ............................................ 8

VI.     REQUEST FOR AWARD OF ATTORNEYS' FEES BASED ON THE SETTLEMENT AGREEMENT .............................................................................. 9

            The Customary Fee ..................................................... 11

            The Contingent Nature of the Fee ................................. 11

            The Results Obtained .................................................. 122

            The Attorneys' Experience, Reputation, and Ability .......... 12

            Class Counsel Also Request an Award of $128,927.20 in Expenses Incurred in Prosecuting this Litigation and Securing the Settlement for the Class ......... 12

VII.    CLASS REPRESENTATIVES' REQUEST SERVICE AWARDS OF UP TO $10,000 EACH ............................................................... 13

VIII.   CONCLUSION ........................................................................ 14

**Cases**

*Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist LEXIS 224999 (N.D. Cal. Dec. 1, 2020) ............................................................................ 9

*Covillo v. Specialtys Cafe*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ................................. 14

*Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018)9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................... 10

*In re Animation Workers Antitrust Litig.*, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) .......... 14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................ 10

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ................................... 10

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000).. 14

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ............................ 9,10

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020) ....................... 10

*In re Wash. Pub. Power Supply Sys. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ............................... 9

*Knapper v. Cox Comm'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) ......................................... 9

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) ............................................... 10

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ............................... 10

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ........................................................... 10

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................ 13

*Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895 (9th Cir. 1995) .............................. 10

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ......................................... 10

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F. 2d 403 (9th Cir. 1990)................... 11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)...................................................... 10

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ...................................... 10

**Statutes**

Fed. R. Civ. P. 30(b)(6)............................................................................................................. 6

2

# I.  INTRODUCTION

Plaintiffs Aram Terteryan, Tatyana Davtyan, Marine Davtyan (collectively, the "Class Representatives") hereby request that the Court award $733,333.00 in attorneys' fees and reasonable costs of $128,927.20 incurred in the prosecution and settlement of this class action brought on behalf of a class of individuals who had no relationship with Nissan Motor Acceptance Corporation ("NMAC"). NMAC used an automatic dialer and prerecorded voice messages to place calls to the members of the class, none of whom had consented to receive such calls. The case settled, and the Court granted preliminary approval on October 11, 2019. This motion, along with final approval, is scheduled for August 22, 2022.

The combined lodestar for class counsel is $1,570,962.50. The total amount of fees requested of $733,333.00 therefore represents approximately 47% of the lodestar. Such an award is appropriate given the terms of the Settlement Agreement in this case.

Specifically, Paragraphs 5.02 and 5.03 of the Settlement Agreement and Release read as follows:

> 5.02    Fees to Class Counsel.  Class Counsel may petition for an award of Attorneys' Fees not exceeding one third (33 1/3 %) of the Settlement Fund. Defendant shall not object to such an award of Attorneys' Fees provided that the award does not exceed that amount.

> 5.03    Requests for Attorneys' Fees and Costs.  Any request for attorney's fees and costs to be paid from the Settlement Fund must be filed prior to the Final approval Hearing and be supported by a motion and brief in support of the requested fee.  Any person who requests Attorneys' Fees in connection with this the Settlement must appear at the Final Approval Hearing either in person or through counsel.  No party may pay Attorney's Fees, Costs or any Incentive Award relating to this Settlement unless approved by the Court.  Class Counsel's motion for an award of attorneys' fees and expenses to be paid from the Settlement Fund shall be filed at least ten (10) days prior to the date for class members to object.  Class Counsel shall be entitled to payment of the fees awarded by the Court out of the Settlement Fund.  This Settlement will be binding and enforceable regardless of whether the Court approves the attorneys' fees and costs sought by Class Counsel. In addition, no interest will accrue on such amounts at any time.

//

Class counsel's costs and expenses from the Settlement Fund (¶2.36) are part of the Settlement Costs (¶2.35)

> 2.35   "Settlement Costs" means all costs incurred by Plaintiffs, the Class and their attorneys, including but not limited to Plaintiffs' attorneys' fees, costs of suit, Plaintiffs' expert or consultant fees, reasonable expenses incurred in connection with the prosecution of the Action, any incentive payments paid to the Class Representatives, notice costs, costs of claims administration and all other costs of administering the settlement.

> 2.36   "Settlement Fund" means the non-reversionary cash sum of $2,200,000.00 that NMAC will pay to settle this Action and obtain a release of all Released Claims. In no event shall NMAC be required to pay more than $2,200,000.00 to obtain a release of the Released Claims.

## II.  STATEMENT OF THE CASE

On March 24, 2016, Mr. Terteryan[1] on behalf of himself and a putative class filed a complaint in this matter in the United States District Court Central District of California, alleging a violation of the Telephone Consumer Protection Act. The case involved NMAC calling a NMAC customers' references or acquaintances to collect delinquent debts from the borrower. Class Representatives alleged that NMAC placed these calls using an automated telephone dialing system to people who had not given NMAC consent to make these calls.

The TCPA prohibits calls and prerecorded messages to a person's cell phone using an Automatic Telephone Dialing System ("ATDS") without the prior express consent of the called party. Class members are non-customers who NMAC contacted as part of its efforts to collect on the account of a NMAC customer. None of the class members had consented to calls from NMAC. Plaintiffs alleged that through analysis of NMAC's records, broad notice to class members, and a robust claims verification procedure, it would be possible to provide notice to non-customer class members.

## III. GENERAL DESCRIPTION OF CLASS COUNSEL'S SERVICES TO THE CLASS

Throughout this litigation – which spans over six years from the filing of the complaint on March 24, 2016 through the date of this petition – Plaintiffs have been represented by

---

[1] Ms. Tatyana Davtyan and Ms. Marine Davtyan were later added as putative class representatives.

Kemnitzer, Barron & Krieg, LLP and Lyngklip & Associates, PLC. Bryan Kemnitzer (47 years' experience) and Ian Lyngklip (30 years' experience) served as principal counsel for Plaintiffs in this case.

On August 12, 2016, NMAC filed a Notice of Motion and Motion to Dismiss and Motion to Strike. The court denied both NMAC's Motion to Strike and Motion to Dismiss in November of 2016. NMAC answered the First Amended Complaint on December 7, 2016. The parties provided initial disclosures on November 30, 2016, and ultimately thousands of pages of documents were produced by both parties during the discovery phase of the case.

The discovery process not only included production of documents, but also a number of Interrogatories and Requests for Admissions. NMAC produced a total of 14,053 documents. Plaintiffs produced 80 documents, and documents were produced by cell phone carriers. In addition, a total of 11 depositions were taken, including testimony from NMAC and its telecommunications service providers

Plaintiffs also made a request to the Federal Trade Commission under the Freedom of Information Act seeking information regarding consumer complaints relating to the Telephone Consumer Protection Act against NMAC. The FTC responded by indicating that it had located 35 responsive complaints.

In addition, subpoenas were sent to six entities for depositions and document production, including AT&T Wireless, Verizon, Century, Metro PCS, T-Mobile, and US Cellular. These subpoenas were sent out after plaintiffs filed a Motion for Preliminary Approval and after the court granted the Motion for Preliminary Approval on October 11, 2019. Class Counsel had to negotiate the subpoenas and record requests extensively over the course of approximately two years.

This was hard fought litigation from the outset, requiring significant data discovery that triggered multiple data discovery disputes, thorny legal issues (see R. 131, Joint Status Report), and three mediation sessions.

Class Counsel performed the following services to the Class:

- Pursued document and data discovery to identify and define the Class, including

enforcement via several meet and confers and Motion to Compel Discovery;

- Analyzed defense discovery and took Fed. R. Civ. P. 30(b)(6) depositions from a number of defense representatives and cell phone carriers' depositions. These depositions, and the prior discovery and discovery enforcement efforts taken to prepare for them, were crucial in enabling Class Counsel to draft a Motion for Class Certification, and ultimately to prepare the case for settlement and preliminary approval.

- Engaged in three private JAMS mediations before the Honorable Ronald Sabraw;

- Negotiated the Settlement Agreement and associated Claim Form and Settlement Notice for this Settlement; and

- Prepared the Preliminary Approval Motion, responded to the Court's changes and questions regarding the Settlement, and are continuing to perform under the Court's Preliminary Approval Order, including coordinating with the Settlement Administrator to assure execution of the notice plan, and filing this motion.

## IV. MEDIATION

The parties participated in a mediation with the Hon. Ronald Sabraw (Ret.) on September 22, 2017. After the first mediation, a second mediation took place on January 17, 2018. Between the two mediations, Plaintiffs' counsel won a Motion to Compel class discovery of nine months of data from NMAC.

A third mediation with the Judge Sabraw took place on June 6, 2018. After the third mediation, Judge Sabraw provided the parties with a Confidential Mediator's Proposal on August 24, 2018.

Following the third mediation and receipt of the Confidential Mediation Proposal, the parties continued to discuss the possibility of settlement. In February of 2019, the parties entered into a Memorandum of Understanding and commenced drafting a Settlement Agreement, which ultimately became the Settlement Agreement for purposes of preliminary approval and final approval. Numerous revisions of the Settlement Agreement and Release were drafted, and the parties signed the final Settlement Agreement in July of 2019.

## V.  EFFORTS TO IDENTIFY CALL RECIPIENTS/POTENTIAL CLASS MEMBERS

After the parties entered into a settlement agreement and the Court had granted Preliminary Approval, it was then necessary to identify the class.

As is the case with all "wrong number" TCPA class actions, the critical step in the class notice plan involves identifying the persons who received the calls from the defendant that are at issue in the lawsuit. Here, Class Counsel sought to identify the recipients of the calls at issue by serving subpoenas on the major cell phone carriers in order to identify the owners of the cell phone numbers to which NMAC had placed calls (Verizon, AT&T, T-Mobile, Metro PCS, US Cellular, and Century Link). Those subpoenas were served in December 2019.

To say that the cell phone carriers were uncooperative would be an understatement. As set forth in the joint status report and request for hearing filed on March 29, 2022, and the declaration of Bryan Kemnitzer, it was necessary to file an additional matter in the United States District Court Eastern District of Michigan in order to get the cell phone carriers to comply with subpoenas. The carriers conduct resulted in a substantial increase in class counsel's fees and costs.

### (a) Carriers' Response to Subpoenas

Unfortunately, Class Counsel encountered numerous difficulties in obtaining the necessary subscriber information from the carriers for the phone numbers at issue. No carrier except US Cellular provided the data requested by the compliance deadline in the subpoena. Some (but not all) of the carriers objected to providing the information sought in the subpoena unless notice of privacy rights were first provided to the subscribers in certain jurisdictions. Class Counsel engaged in an extensive meet and confer process with legal counsel for the carriers in an effort to resolve this issue. Although some issues were resolved, Class Counsel were forced to file a separate action against the carriers in Michigan for the purpose of enforcing the subpoenas that had been issued.

The case in Michigan was filed in the United States District Court in the Eastern District of Michigan, Southern Division case number 2:20-MC-50761-SFC-EAS.

The following orders were entered by the Eastern District of Michigan:

1. October 28, 2020 – Stipulated Order to Compel Verizon Wireless to Produce Documents in Response to Subpoena.

2. November 19, 2020 – Stipulated Order Compelling AT&T Wireless to Produce Documents in Response to Subpoena.

3. January 4, 2021 – Stipulated Order Compelling T-Mobile to Produce Documents in Response to Subpoena.

4. June 2, 2021– Stipulated Order to Compel AT&T Wireless to Produce Documents in Response to Subpoena.

5. October 6, 2021 – Emergency Motion to Compel Compliance with Document Production Request and Court Order against T-Mobile.

6. November 10, 2021– Stipulated Order Compelling T-Mobile to Produce Documents in Response to Subpoena.

**(b) Cooperation of the Parties**

NMAC was also asked to provide the carriers with certain additional information they requested regarding the dates of the calls to particular cell numbers.  NMAC did provide such information (confidentially) to the carriers in November of 2020, even though such information was not required under the terms of the Settlement Agreement.

Class Counsel provided periodic reports to this Court regarding the status of this process and the difficulties that had been encountered (Dkts. 119, 121, 125, 128). The Joint Status Report of July 9, 2021 (Ex. F), set forth the issues with the carriers as of that date, but additional assistance from the Michigan Court was necessary and resulted in the Stipulated Order against T-Mobile compelling compliance with the subpoena. These difficulties unfortunately resulted in a considerable delay in compiling the notice list and completing the notice process.  T-Mobile did not produce the subscriber information to the class administrator, KCC, until January 4, 2022.

**(c) Compilation of Notice Class**

After the completion of the subpoena process described above, 238,160 unique cell numbers remained for which Class Counsel had identified a call recipient, but NMAC was

8

unable to match the recipient information with its customer and remove that cell number from the notice list.

In order to confirm that the owners of those 238,160 unique cell phones qualified to participate in the class settlement, Class Counsel elected to also use a "reverse phone look up" process, as set forth in the Settlement Agreement. Class counsel used that information identify the users of those to determine of those individuals were NMAC customers who should be excluded from the class.[2] Class counsel concluded this additional step would be in the best interests of class members, because it would likely eliminate additional cell phone numbers from the notice population, reduce the cost of class notice, and increase the amount available for distribution to the class.

To that end, the class administrator, KCC, retained Pacific East on March 9, 2022 to perform that reverse look up. On March 16, 2022, Pacific East provided the parties with the results of the reverse look up, which identified an additional 118,614 users of those phones who were actual NMAC customers, and therefore not qualified to participate in the class settlement. Those unqualified individuals were removed from the class list.

This process was completed on March 24, 2022.  As a result of these additional steps, Notice was sent out to 119,546 potential class members. These additional steps have reduced the cost of class notice, which will benefit the class by increasing the settlement funds available for distribution.

## VI. REQUEST FOR AWARD OF ATTORNEYS' FEES AND EXPENSES BASED ON THE SETTLEMENT AGREEMENT

This Court is required to ensure that attorneys' fees awarded pursuant to Federal Rule of Civil Procedure 23(h) are reasonable. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,1294 n.2 (9th

---

[2] Reverse phone look ups are frequently used to identify potential class members in wrong number TCPA cases. (*Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist LEXIS 224999, at *8 (N.D. Cal. Dec. 1, 2020); *Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *4 (N.D. Cal. Sept. 27, 2018); *Knapper v. Cox Comm'ns, Inc.*, 329 F.R.D. 238, 245 (D. Ariz. 2019).) The Settlement Agreement in this case specifically contemplated that a reverse phone look up may be used to identify potential class members, in addition to the subpoena process described above.  Settlement Agreement, § 7.01(c).

Cir. 1994). This duty exists irrespective of whether an objection is lodged to the fee request. *Zucker v. Occidental Petroleum Corp*., 192 F.3d 1323, 1328-29 (9th Cir. 1999). The Court has discretion to choose whether to award fees based upon a either a "percentage-of-recovery" or "lodestar" basis. *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 556 (9th Cir. 2019), however, the resulting fee must be reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

When using the percentage-of-recovery method, 25% represents a benchmark fee which is presumptively reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Any upward or downward adjustment from the 25% benchmark requires that the court provide reasonable explanation for the deviation. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). In setting the fee the Court should consider: (1) the results; (2) risk to class counsel; (3) secondary benefits of the settlement; (4) the market rate in the particular field of law; (5) the burdens class counsel experienced; and (6) whether the fee was contingent. *See In re Optical Disk Drive Prods. Antitrust Litig*., 959 F.3d 922, 930 (9th Cir. 2020); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048 (9th Cir. 2002). Courts that deviate from the 25% benchmark are encouraged to perform a "cross-check" using lodestar method to confirm that the percentage-of-recovery amount is reasonable. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Indirect Purchaser Class v. Erwin (In re Optical Disk Drive Prods. Antitrust Litig.)*, 959 F.3d 922, 929-30 (9th Cir. 2020).

The lodestar method, involves 'multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonably hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The reasonable hourly rate is determined by considering the "experience, skill, and reputation of the attorney requesting fees." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). Here, in addition to their professional qualifications, Class Counsel have submitted evidence of fee awards in prior cases in support of the reasonableness of their rates. (Kemnitzer

Dec. ¶¶ 26-37; Lyngklip Dec. ¶¶ 9-10.) Rate determinations from other cases are satisfactory evidence of the prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F. 2d 403, 407 (9th Cir. 1990). Counsel's costs and expenses are summarized in the supporting declarations (Kemnitzer Dec. ¶ 6; Lyngklip Dec. ¶ 2;) and summarized in the following table:

| Table 1—Class Counsel's Lodestar and Expenses | | | |
|---|---|---|---|
| Firm | Fee Lodestar | Expenses | Total |
| Kemnitzer Barron & Krieg | $964,107.50 | $54,327.44 | $1,018,434.94 |
| Lyngklip & Associates | $606,855.00 | $74,599.76 | $681,454.76 |
| Total | $1,570,962.50 | $128,927.20 | $1,699,889.70 |

Under the Settlement, defendants have agreed to pay Class Counsel's fees and expenses, as awarded by the Court, in an amount not exceeding $733,333.00 and expenses in the amount of $128,927.20, for a total of $862,260 from the Settlement Fund of $2,200,000.00. (Settlement Agreement §5.02 and 5.03). Class Counsel request a fee award equal to the maximum allowed under the Settlement Agreement, for a net fee award of $733,333.00, which reflects approximately 47%, of their lodestars:

| Table 2—Allocation of Fees Among Class Counsel Firms | | | | |
|---|---|---|---|---|
| Firm | Fee Lodestar | % of Total Lodestar | Requested Fee Award | % of Firm Lodestar |
| Kemnitzer Barron & Krieg | $964,107.50 | 61% | $447,333.00 | 47% |
| Lyngklip & Associates | $606,855.00 | 39% | $286,000.00 | 47% |
| Total | $1,570,962.50 | 100% | $733,333.00 | 47% |

**The Customary Fee**. Here, Class Counsel are not seeking *any* multiplier - asking instead for percentage of fee recovery, which represents only a fraction of their lodestar. As such, the lodestar crosscheck of the requested 33% results in a fee that is reasonable, and well below the actual fees incurred. In light of the investment made and risks faced by Class Counsel in the case. Plaintiffs' fee request is reasonable.

**The Contingent Nature of the Fee**. Class Counsel undertook this class action on a purely contingent basis, with no assurance of recovering fees or litigation costs. (Kemnitzer Dec. ¶38.) Despite this lack of assurance, Class Counsel expended significant time and

11

resources to prosecute the case on behalf of the Class.

**The Results Obtained**. After conducting the necessary discovery and diligence, Class Counsel determined that the potential size of this case is significantly larger than defendants initially proposed to Class Counsel and the Court. Counsel was unable to make that determination without pursuing the data discovery from both NMAC and the cell phone carriers, which as explained above was a contested and protracted process that ultimately required a sit-down session with both sides' counsel in the Court's jury room.

**The Attorneys' Experience, Reputation, and Ability**. Class Counsel have successfully prosecuted many complex consumer class actions. (Kemnitzer Dec. ¶¶ 23-24; Lyngklip Dec. ¶¶ 49-51.) Class Counsel's reputation and skill in developing evidence supporting liability, damages, and the propriety of class certification were key to reaching the Settlement benefitting the Class.

In light of the quality of the representation provided by Class Counsel, the outstanding benefit to the Class obtained in the Settlement, the complexity of the case, and the risk of nonpayment, a $733,333.00 - that is, approximately 47% of Class Counsels' lodestar - plus costs, is reasonable.

The proposed Settlement is the result of Class Counsel's thorough factual investigation and litigation of novel legal issues. Class Counsel represented the Class by pursuing and analyzing data discovery to determine whether the Class could be identified without the need for self-identification.

Class Counsel negotiated the best settlement available for the Class, and has acknowledged the limited success of the litigation by accepting a substantial cut in their lodestar fees. There was no collusion here. Class Counsel respectfully requests that the Class Counsel be awarded fees as requested above.

**Class Counsel Also Request an Award of $128,927.20 in Expenses Incurred in Prosecuting this Litigation and Securing the Settlement for the Class**

Plaintiffs respectfully request reimbursement of $128,927.20 in expenses incurred by Class Counsel. These are detailed in the supporting declarations (Kemnitzer Dec. ¶6; Lyngklip

Dec. ¶ 3).

## VII.   CLASS REPRESENTATIVES REQUEST SERVICE AWARDS
## OF UP TO $10,000 EACH

Pursuant to the Settlement Agreement Paragraph 5.04, the three class representatives are requesting of the Court a service award of up to $10,000.00 each.

> 5.04    Payment to the Class Representatives. The Class Representatives will ask the Court to award each of them an incentive payment for the time and effort they have personally invested in the Action on behalf of the Settlement Class. Defendant shall not object to such incentive payment to be paid to Aram Terteryan, Marine Davtyan, and Tatyana Davtyan, provided that the incentive payment to each Class Representative does not exceed $10,000. Not until the Judgment becomes final (as set forth in Sections 2.22 and 12.01) and within five (5) days of the Judgment becoming final after receiving a W-9 form from Aram Terteryan, Marine Davtyan, and Tatyana Davtyan, the Claims Administrator shall pay to Class Counsel the amount of incentive payment awarded by the Court, and Class Counsel shall disburse such funds.

Plaintiffs have devoted their time for the benefit of other Class members, notwithstanding the small amounts they stood to recover personally. (Aram Terteryan Dec. ¶¶ 8-12, Tatyana Davtyan Dec. ¶¶ 8-12; Marine Davtyan[3] Dec. ¶¶ 8-12.) Throughout the case, they kept themselves apprised of the case's progress, regularly asking questions, diligently reviewing the filings and discovery Class Counsel sent to them and promptly responding to Class Counsels' requests. They responded to defendants' extensive requests for admission, interrogatories, and document requests, and were deposed by defendants.

The Settlement Agreement provides for service awards of up to $10,000 to each of the three Plaintiffs, as the Court may approve. (Settlement Agreement §5.04.) Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Courts have discretion to approve service awards based on, *inter alia*, the amount of time and effort spent, the duration of the litigation, and the

---

[3] As of the date of the filing of this motion, counsel has not received the signed declaration from Marine Davtyan. This declaration will be submitted to the Court as soon as it is available.

personal benefit (or lack thereof) as a result of the litigation. *See In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *9 (N.D. Cal. Nov. 11, 2016) (citations omitted). In the Ninth Circuit, a service award of $5,000 is presumptively reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000); *Covillo v. Specialtys Cafe*, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) ("a $5,000 incentive award is presumptively reasonable").

## VIII.   CONCLUSION

Plaintiffs and their Class Counsel respectfully request that the Court grant their request for $733,333.00 in attorneys' fees and costs of $128,927.20 as requested and allocated above, and service awards to each Plaintiff in the maximum amount, $10,000.

Dated:  May 31, 2022                        KEMNITZER, BARRON & KRIEG, LLP


                                     By:    _____
                                            BRYAN KEMNITZER